IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **PETER COLLINS,** | ) | **CV F 03-6424 AWI TAG** |
| | ) | |
| **Plaintiff,** | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER GRANTING MOTION FOR** |
| **v.** | ) | **SUMMARY JUDGMENT** |
| | ) | |
| **THE COUNTY OF KERN, et al.,** | ) | (Document #19) |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |
| **AND RELATED CROSS-ACTIONS** | ) | |
| | ) | |

This action arises from an incident in which Plaintiff Peter Collins was attacked by other inmates while incarcerated at the Lerdo Pre-Trial Facility.  The court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's civil action against the County of Kern, Sheriff Karl Sparks, D.O. Perkins, and D.O. Reynolds.

## PROCEDURAL HISTORY

On October 27, 2003, Plaintiff filed a first amended complaint.  The first cause of action is brought under 42 U.S.C. § 1983 and alleges a violation of Plaintiffs Eighth Amendment rights. The second cause of action alleges a conspiracy to interfere with Plaintiff's civil rights in violation of 42 U.S.C. § 1985(c).  The third cause of action is brought under 42 U.S.C. § 1983

1    and alleges a violation of Plaintiff's Fourteenth Amendment rights.   The fourth cause of action is

2    brought under 42 U.S.C. § 1983 and alleges a violation of "Due Process."

3           On March 21, 2005, Defendants filed a motion for summary judgment.    Defendants

4    contend that there are no facts showing that Defendant D.O. Perkins or Defendant D.O. Reynolds

5    were aware of a threat to Plaintiff or that they acted deliberately indifferent.   Defendants contend

6    that Plaintiff cannot establish liability for either Defendant County of Kern or Defendant Sparks

7    because Plaintiff cannot show a violation of his rights and there is no evidence of a policy that

8    caused the attack.    Defendants contend that there is no evidence of racial discrimination and they

9    are entitled to summary judgment on Plaintiff's Section 1985(c) claim.

10          When Plaintiff did not file a timely response to Defendants' motion, the court took the

11   motion for summary judgment under submission.    On April 20, 2005, Plaintiff filed a notice of

12   Plaintiff's inability to respond to Defendants' motion.    Plaintiff requested additional time to

13   conduct discovery.    On May 18, 2005, the court determined that Plaintiff had failed to make the

14   request showing to continue the summary judgment motion pursuant to Rule 56(f) of the Federal

15   Rules of Civil Procedure.   The court directed Plaintiff to file any response to the motion within

16   ten days.

17          On May 25, 2005, Plaintiff filed an opposition.    Plaintiff contends that because of head

18   wounds, his memory is impaired.    Plaintiff attaches the declaration of Michael Pettisford,

19   another inmate.   Plaintiff claims that Mr. Pettisford's statements controvert the facts submitted

20   by Defendants.

21          On May 27, 2005, Defendants filed a reply.    Defendants point out that Plaintiff failed to

22   follow Local Rules and the Rules of Civil Procedure because Plaintiff did not timely oppose

23   Defendants' motion and Plaintiff did not file a response to Defendants' undisputed facts.

24   Defendants contend that the declaration of Mr. Pettisford should be disregarded because he is not

25   competent to testify.

26

27

28                                                    2

**FACTS**

**A.  Defendants' Proposed Undisputed Facts[1]**

Plaintiff was in the custody of the Kern County Sheriff's Department at the Lerdo Pre-Trial Facility of the Kern County Jail on June 30, 2001.

On April 2, 2001, Plaintiff was arrested and booked by the Kern County Sheriff's Department. At the time of his booking, Plaintiff claimed a gang affiliation with the "Crips" and requested that he be kept segregated from other people that claimed a gang affiliation with the "Bloods." Plaintiff denied that there was any other group or person from whom he needed to be segregated.

On June 30, 2001, Plaintiff was transferred to a cell in D-Pod, Unit 5.   Plaintiff was transferred out of A-Pod because A-Pod was to be used to house federal inmates.

Neither the Sheriff, Perkins nor Reynolds were involved in the decision to transfer Plaintiff to a cell in D-Pod, Unit 5.

Plaintiff did not inform anyone of any safety concerns or segregation issues at the time that he was transferred to D-Pod, Unit 5.

On June 30, 2001, a fight erupted in D-Pod, Unit 5, between Black and Hispanic inmates. The fight started minutes after Plaintiff arrived in D-Pod.  The fight in D-Pod, Unit 5, involved four (4) or more Black inmates and eight (8) or more Hispanic inmates.

Neither the Sheriff, Perkins nor Reynolds had advance information or knowledge that a fight would erupt.   Neither the Sheriff, Perkins nor Reynolds had any information that Plaintiff was at risk at being injured in a fight.

Once the fight erupted, Perkins took prompt action to stop the fight, secure the area, and ensure prompt medical treatment for Plaintiff.

Once the fight erupted, Reynolds took prompt action to stop the fight, secure

---

[1]  Because Plaintiff did not respond to Defendants' proposed undisputed facts, the court deems the facts submitted by Defendants undisputed.   Plaintiff's evidence will be considered as proposed disputed facts.

the area, and ensure prompt medical treatment for Plaintiff.

On June 30, 2001, at the time of the fight in D-Pod, Unit 5, Defendant Sheriff Sparks was not present at the Lerdo Detention Facility.

Plaintiff was immediately treated for the injuries he sustained in the fight and was transported to Kern Medical Center Emergency Department where he received immediate medical treatment.

Plaintiff has no information that Perkins and Reynolds acted improperly. According to Plaintiff, the inmates involved in the fight were the people that "were wrong."

Prior to employment as a Detention Officer with the County of Kern all individuals are required to attend a five to seven week academy that includes training on topics such as security of inmates, facility security, inmate classification, gangs, liability, laws of arrest and search and seizure. The curriculum occupies approximately 200 hours of training.

Perkins is employed as a Detention Officer with the County of Kern, has received the academy training and has also received training in the areas of jail standards, jail operations liability, inmate segregation, emergency procedures and planning, and suicide prevention.

Reynolds is employed as a Detention Officer with the County of Kern, is a Detentions Training Officer and has also received training in the areas of jail standards, jail operations liability, inmate segregation, emergency procedures and planning, and suicide prevention. Reynolds has also completed the required training instructor course in order to become an instructor.

**B. Plaintiff's Disputed Facts**

Plaintiff provides the declaration of former inmate Michael Pittisford.[2]  Mr. Pittisford states that he and other black inmates were confined in D-Pod for approximately 60-days prior to June 30, 2001, without incident or conflict with Mexican American inmates.  Mr. Pittisford

---

[2]  Mr. Pettisford's name is spelled numerous ways in Plaintiff's opposition and Mr. Pettisford's declaration, including "Pettisford", "Pittisford", "Pettisford", and "Pettiford".  For ease of reference, the court will use the name Mr. Pettisford.

1  states that:

2      Immediately before and shortly after inmate Peter Collins entered D-Pod on June
       30, 2001, racial insults and threats were loudly made by the Mexican inmates of
3      D-Pod against the personal safety of inmate Peter Collins.
       Immediately before and shortly after Peter Collins entered D-Pod on June 30,
4      2001, he (Peter Collins) myself and all other Black inmates of D-Pod were
       violently attacked and beaten by the Mexican inmates of D-Pod on June 30, 2001.
5      I Personally observed no less than 10 correctional officers stood idle for at least 3-
       4 minutes while inmate Peter Collins was being beaten ,kicked, and stomped
6      (sic.) by no less than 6 Mexican American inmates in D-Pod on June 30, 2001.

7                                    **LEGAL STANDARD**

8          Summary judgment is appropriate when it is demonstrated that there exists no genuine

9  issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

10 Fed. R. Civ. P. 56(c); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Poller v.</u>

11 <u>Columbia Broadcast System</u>, 368 U.S. 464, 467 (1962); <u>Jung v. FMC Corp.</u>, 755 F.2d 708, 710

12 (9th Cir. 1985); <u>Loehr v. Ventura County Community College Dist.</u>, 743 F.2d 1310, 1313 (9th Cir.

13 1984).

14         Under summary judgment practice, the moving party
           [A]lways bears the initial responsibility of informing the district
15         court of the basis for its motion, and identifying those portions of
           "the pleadings, depositions, answers to interrogatories, and
16         admissions on file, together with the affidavits, if any," which it
           believes demonstrate the absence of a genuine issue of material
17         fact.

18 <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

19 burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

20 in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

21 file.'"  <u>Id</u>.  Indeed, summary judgment should be entered, after adequate time for discovery and

22 upon motion, against a party who fails to make a showing sufficient to establish the existence of

23 an element essential to that party's case, and on which that party will bear the burden of proof at

24 trial.  <u>Id</u>. at 322.  "[A] complete failure of proof concerning an essential element of the

25 nonmoving party's case necessarily renders all other facts immaterial."  <u>Id</u>.  In such a

26 circumstance, summary judgment should be granted, "so long as whatever is before the district

27

28                                          5

1  court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

2  satisfied." <u>Id</u>. at 323.

3       If the moving party meets its initial responsibility, the burden then shifts to the opposing

4  party to establish that a genuine issue as to any material fact actually does exist.  <u>Matsushita Elec.</u>

5  <u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986); <u>First Nat'l Bank of Arizona v. Cities</u>

6  <u>Serv. Co.</u>, 391 U.S. 253, 288-89 (1968); <u>Ruffin v. County of Los Angeles</u>, 607 F.2d 1276, 1280

7  (9th Cir. 1979), <u>cert</u>. <u>denied</u>, 455 U.S. 951 (1980).    In attempting to establish the existence of

8  this factual dispute, the opposing party may not rely upon the mere allegations or denials of its

9  pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or

10  admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e);

11  <u>Matsushita</u>, 475 U.S. at 586 n.11; <u>First Nat'l Bank</u>, 391 U.S. at 289; <u>Strong v. France</u>, 474 F.2d

12  747, 749 (9th Cir. 1973).  The opposing party must demonstrate that the fact in contention is

13  material, i.e., a fact that might affect the outcome of the suit under the governing law, <u>Anderson</u>

14  <u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec.</u>

15  <u>Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the

16  evidence is such that a reasonable jury could return a verdict for the nonmoving party, <u>Anderson</u>,

17  477 U.S. 248-49; <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

18       In the endeavor to establish the existence of a factual dispute, the opposing party need not

19  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

20  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

21  trial."  <u>First Nat'l Bank</u>, 391 U.S. at 290; <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose

22  of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether

23  there is a genuine need for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)

24  advisory committee's note on 1963 amendments); <u>International Union of Bricklayers v. Martin</u>

25  <u>Jaska, Inc.</u>, 752 F.2d 1401, 1405 (9th Cir. 1985).

26       In resolving the summary judgment motion, the court examines the pleadings,

27

28                                        6

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c); <u>Poller</u>, 368 U.S. at 468; <u>SEC v. Seaboard Corp.</u>, 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, <u>Anderson</u>, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, <u>Matsushita</u>, 475 U.S. at 587 (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)(per curiam); <u>Abramson v. University of Hawaii</u>, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

## DISCUSSION

**A.  Failure to Comply with Local Rules and Federal Rules of Civil Procedure**

Defendants contend that the court should not consider Plaintiff's opposition because it was filed late and because Plaintiff failed to respond to Defendants' statement of undisputed facts.  While Plaintiff's opposition was filed late, in the interests of justice, the court allowed Plaintiff to file a late opposition in response to Plaintiff's statement that more time to conduct discovery was needed.   Because Plaintiff's opposition was filed within the time set forth in the court's May 18, 2005 order, the court will consider Plaintiff's opposition.

Plaintiff failed to comply with the Local Rules when he did not respond to Defendants' undisputed facts.  Local Rule 56-230(b) provides in pertinent part as follows:

> Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts which are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial. The opposing party may also file a concise "Statement of

Disputed Facts" and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication. . . .

Plaintiff failed to comply with Local Rule 56-230(b) because Plaintiff has not responded to the statement of undisputed facts and has not provided admissions, denials and supporting facts in response.

While Plaintiff's failure to respond to Defendants' undisputed facts has made it difficult for the court to address Defendants' motion, the court declines to grant Defendants' motion on the ground that Plaintiff failed to comply with the Local Rules.   The remedy for Plaintiff's failure to address Defendants' undisputed facts and Defendants' evidence is to consider this evidence as undisputed.   In the interests of justice, the court will consider Mr. Pettisford's declaration to determine if it contains any evidence to refute Defendants' evidence.   Thus, the court declines to grant Defendants' motion based on Plaintiffs' failure to comply with the Federal Rules of Civil Procedure and Local Rules.

**B.   Pettisford Declaration**

Defendants contend that the court should not consider the declaration of Mr. Pettisford. Defendants point out that Mr. Pettisford is referred to by four different spellings of his last name, including, "Pettisford", "Pittisford", "Pettsford", and "Pettiford".   Because the spelling "Pettisford" is primarily used in both the opposition and introduction to the declaration, the court could presume that the other references are simply misspellings.   However, the declarant signed his name in block letters, *"Michael Pettiford."*   Thus, Mr. Pettisford's true name remains unclear.   Other than his name, Mr. Pettisford is not identified in any manner, such as a current address or prison identification number.

To the extent that Mr. Pettisford's name is spelled in four different ways, and the execution of the declaration is spelled differently that all other spellings of the name, it appears the declaration was prepared by someone other than Mr. Pettisford.   The court has concerns that the declaration was not carefully reviewed prior to signing because the misspellings were not

8

1   corrected.   This raises concerns about whether Mr. Pettisford really agrees under penalty of

2   perjury with everything he signed.   Because Mr. Pettisford is not identified by any other means

3   than his name, the differences in spellings makes it difficult for Defendants or any other party to

4   find Mr. Pettisford and depose him about his knowledge of this case.   While the court has

5   concerns about relying on Mr. Pettisford's declaration, no evidence has been presented to the

6   court showing that Mr. Pettisford does not exist, the declaration was fabricated, and that Mr.

7   Pettisford could not be produced for deposition and/or trial.   As such, the court denies

8   Defendants' request that the court simply disregard Mr. Pettisford's declaration as false.   In

9   addition, the court denies Defendants' request to award expenses and attorney's fees incurred in

10   contesting this declaration.

11   **C.   Failure to Protect – Eighth Amendment**

12          The first cause of action alleges a violation of the Eighth Amendment.   Neither Plaintiff's

13   complaint nor his opposition clarify Plaintiff's exact theory of relief.   However, from a liberal

14   reading of the complaint, it appears that Plaintiff is raising two theories.   First, Plaintiff is

15   alleging that Defendants failed to protect him from the attack because Defendants put Plaintiff

16   into D-Pod, Unit 5, where the fight began a few minutes after Plaintiff's arrival.   Second,

17   Plaintiff is alleging that Defendants failed to protect him because Defendants did not

18   immediately stop the fight.

19          Preliminarily, the court notes that it is unclear whether Plaintiff was in the Lerdo Pre-

20   Trial Facility awaiting trial or if Plaintiff was serving a sentence.   The parties' focus in their

21   briefs on the Eighth Amendment implies that, at the time of the assault, Plaintiff had been

22   convicted and was serving a sentence.   The Eighth Amendment's prohibition against cruel and

23   unusual punishment protects convicted prisoners.   Bell v. Wolfish, 441 U.S. 520, 535 (1979);

24   Graham v. Connor, 490 U.S. 386, 395 n.10 (1989).   The Due Process Clause of the Fourteenth

25   Amendment protects pre-trial detainees.   Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979);

26   Redman v. County of San Diego, 942 F.2d 1435, 1440 (9th Cir. 1991).   The Eighth Amendment

27

28                                                      9

nonetheless serves as a benchmark for evaluating any such claims.  See Carnell v. Grimm, 74 F.3d 977, 979 (9th Cir.1996) (8th Amendment guarantees provide minimum standard of care for pretrial detainees).  As such, courts often borrow from Eighth Amendment principles in shaping standards applicable to pretrial detainees.  Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir.1996).  In a failure to protect claim, the "deliberate indifference" standard used in Eighth Amendment cases is the level of culpability a pretrial detainee must establish to maintain a failure to protect claim under the Fourteenth Amendment.  Redman v. County of San Diego, 942 F.2d 1435, 1442 (9th Cir. 1991) (en banc).  Because the standard is the same regardless of whether Plaintiff was a pre-trial detainee or had been convicted, the court will analyze Plaintiff's first cause of action under the Eighth Amendment's standards.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).   Prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  Farmer v. Brennan, 511 U.S. 825, 833 (1994); Hoptowit, 682 F.2d at 1250-51.  To establish a violation of this duty, a plaintiff must establish that prison officials were "deliberately indifferent to a serious threat to the inmates's safety."  Farmer, 511 U.S. at 834.   First, the plaintiff must show that the alleged deprivation was, in objective terms, "sufficiently serious."  Id. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the plaintiff must show that the prison official knew of and disregarded an excessive risk to an inmate's health or safety.  Id. at 837.

The prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  Farmer, 511 U.S. at 837.  The prison official need not "believe to a moral certainty that one inmate intends to

attack another at a given place at a time certain before [he] is obligated to take steps to prevent such an assault." Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir.1986). However, before being required to take action the prison official must have more than a "mere suspicion" that an attack will occur. See id. To prove knowledge of the risk a plaintiff may rely on circumstantial evidence. The obviousness of the risk may be sufficient to establish knowledge. See Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir.1995). Thus, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842.

*1. Transfer*

It appears that Plaintiff is alleging an Eighth Amendment violation because Defendants moved Plaintiff to D-Pod, Unit 5,where Plaintiff was attacked. To succeed on this theory, Plaintiff must show that placing him in D-Pod, Unit 5, created a sufficiently serious threat to Plaintiff's safety and that Defendants knew of and disregarded this risk when they placed Plaintiff in D-Pod, Unit 5. For the purposes of this motion, the court will presume that placing Plaintiff in D-Pod, Unit 5, created a serious threat to Plaintiff's safety. However, the undisputed facts reveal that no Defendant knew of and disregarded this threat. The undisputed facts include evidence that neither Defendant Sheriff Sparks, Defendant Perkins, nor Defendant Reynolds were involved in the decision to transfer Plaintiff to a cell in D-Pod, Unit 5. At the time of his booking, Plaintiff only claimed a gang affiliation with the Crips and requested to be keep apart from people that claimed a gang affiliation with the Bloods. Plaintiff denied that he needed to be separated from members of any other group. At the time of the move, Plaintiff did not inform anyone of safety concerns or segregation issues. No facts indicate that Defendants had any knowledge that Plaintiff should not be housed with Hispanic inmates and/or the particular inmates in D-Pod, Unit 5. There is no evidence Plaintiff told any Defendant he would be in danger if placed in D-Pod, Unit 5. Based on the undisputed facts, there is no evidence that Defendant Sheriff Sparks, Defendant Perkins, or Defendant Reynolds knew of and disregarded a

1   serious risk to Plaintiff's safety by placing Plaintiff in D-Pod, Unit 5.

2        A review of the Pettisford declaration does not change this result.   Mr. Pettisford states

3   that the black inmates and Hispanic inmates in D-Pod, Unit 5, lived together without incident or

4   conflict for 60 days.   Mr. Pettisford states that immediately before and shortly after Plaintiff

5   entered D-Pod, racial insults and threats were made against the safety of Plaintiff.   Mr.

6   Pettisford states that immediately before and shortly after Plaintiff entered D-Pod, Plaintiff, Mr.

7   Pettisford, and the other Black inmates were attacked and beaten by the Mexican inmates.

8   Putting aside the fact that it would have been impossible for inmates to begin attacking and

9   beating Plaintiff before he entered D-Pod, Mr. Pettisford's declaration, if believed, provides

10  evidence that at the time Plaintiff was being put into D-Pod, Unit 5, racial insults and threats

11  toward Plaintiff were already being made and Mexican inmates were already attacking Black

12  inmates.   This evidence could provide a circumstantial inference that the guards actually moving

13  Plaintiff knew of a risk to Plaintiff if they completed the move and should have stopped or

14  delayed the move upon hearing the threats and seeing other Black inmates being attacked.

15       However, even if the court presumes that there is a disputed issue of fact on whether the

16  transferring officers were aware of a threat to Plaintiff before he was placed in D-Pod, Unit 5,

17  and attacked, there is no evidence that Defendant Sheriff Sparks, Defendant Reynolds, and

18  Defendant Perkins heard the threats.   Defendant Sheriff Sparks has provided evidence he was

19  not even in the facility that day.   There is no evidence that either Defendant Reynolds or

20  Defendant Perkins had anything to do with transferring Plaintiff.   There is no evidence that

21  Defendant Reynolds or Defendant Perkins heard the threats or saw the attacks prior to Plaintiff

22  being placed in D-Pod, Unit 5.   There is no evidence that Defendant Reynold or Defendant

23  Perkins were in a position to stop the transfer upon hearing the threats and seeing other Black

24  inmates be assaulted.   Thus, even taking the facts set forth in the Pettisford declaration as true,

25  based on the undisputed facts, the court finds that there is insufficient evidence to find Defendant

26  Sheriff Sparks, Defendant Reynolds, and Defendant Perkins knew of and disregarded an

27

28                                                    12

1  excessive risk to Plaintiff's safety by allowing Plaintiff to be placed in D-Pod, Unit 5.

2  ***2.  Fight***

3  In the opposition, Plaintiff appears to take the position that Defendants were deliberately

4  indifferent by failing to stop the attack on Plaintiff.   The court will presume that the attack on

5  Plaintiff constituted a serious risk to Plaintiff's health and safety.   The court will also presume

6  that, upon seeing Plaintiff being attacked, Defendant Reynolds and Defendant Perkins knew of a

7  risk to Plaintiff's health and safety.   The issue is whether the undisputed facts show that

8  Defendant Reynolds and Defendant Perkins disregarded the risk to Plaintiff's health and safety.

9  In the undisputed facts, Defendant Perkins provides evidence that he took prompt action

10  to stop the fight, secure the area, and ensure prompt medical treatment for Plaintiff.   In the

11  undisputed facts, Defendant Reynolds provides evidence that he took prompt action to stop the

12  fight, secure the area, and ensure prompt medical treatment for Plaintiff.   Defendant Sheriff

13  Sparks provides evidence that he was not present at the Lerdo Detention Facility.   Based on

14  these undisputed facts, the court finds that Defendants were not deliberately indifferent to

15  Plaintiff's health and safety when Plaintiff was attacked.   Both Defendant Perkins and

16  Defendant Reynolds took prompt action to stop the fight and obtain medical treatment for

17  Plaintiff.   Defendant Sheriff Sparks could not have personally stopped the fight because he was

18  not there.   Thus, Defendants were not deliberately indifferent based on the undisputed facts.

19  Even considering the Pettisford declaration, there is no disputed issue of fact on whether

20  Defendants were deliberately indifferent.   Mr. Pettisford states:

21  I Personally observed no less than 10 correctional officers stood idle for at least 3-
   4 minutes while inmate Peter Collins was being beaten ,kicked, and stompped
22  (sic.) by no less then 6 Mexican American inmates in D-Pod on June 30, 2001.

23  Considering this declaration, Plaintiff has presented evidence that 10 correctional officers did not

24  assist Plaintiff for 3-4 minutes after he was attacked.   However, this evidence does not dispute

25  Defendants' evidence that Defendant Perkins and Defendant Reynolds took prompt action to stop

26  the fight and ensure prompt medical treatment.   Mr. Pettisford's declaration does not state that

27

28                                                    13

1  Defendant Perkins or Defendant Reynolds were among the officers who took no action for 3-4

2  minutes.  Mr. Pettisford's declaration does not say "all" officers who were present failed to assist

3  Plaintiff, implying Defendant Perkins and Defendant Reynolds must have been among those

4  standing by because they admit they were there.   Mr. Pettisford's declaration does not provide

5  any information on how many officers were present.     Ten correctional officers could have been

6  failing to assist for 3-4 minutes and Defendant Perkins, Defendant Reynolds, and possibly other

7  correctional officers could have been assisting and attempting to stop the fight.   Thus, reviewing

8  all facts submitted by the parties there is no disputed issue of material fact on what Defendant

9  Perkins and Defendant Reynolds were doing.   There is no disputed issue of fact on whether the

10  Defendants, as opposed to unnamed officers, were deliberately indifferent by failing to stop and

11  break up the fight once it occurred.

12  **D.  Sheriff Carl Sparks**

13        Defendant Sheriff Carl Sparks contends that summary judgment is appropriate as to him

14  because the undisputed facts do not show that a constitutional violation occurred and do not

15  show a custom or policy by Defendant Sparks that was the moving force behind any

16  constitutional violation.   Generally, there is no respondent superior liability under Section 1983.

17  Jones v. Williams, 297 F.3d 930, 934 (9th Cir.2002).  A supervisor may be liable under Section

18  1983 only if (1) he or she was personally involved in the constitutional deprivation, or (2) there is

19  a sufficient causal connection between the supervisor's wrongful conduct and the constitutional

20  violation.   Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir.2001); Hansen v. Black, 885 F.2d 642,

21  645-46 (9th Cir. 1989) .   In other words, supervisors can be held liable only if they play an

22  affirmative part in the alleged deprivation of constitutional rights.   A supervisor is liable if he

23  sets "in motion a series of acts by others . . . , which he knew or reasonably should have known,

24  would cause others to inflict the constitutional injury." Graves v. City of Coeur D'Alene, 339

25  F.3d 828, 848 (9th Cir.2003); Larez v. City of LA, 946 F.2d 630, 646 (9th Cir.1991).  A

26  supervisor can be liable by implementing a policy so deficient that the policy itself is a

27

28                                          14

1  repudiation of constitutional rights and is the moving force behind the constitutional violation.

2  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

3       The undisputed facts reveal that Defendant Sparks did not personally participant in the

4  alleged deprivation of constitutional rights.   Defendant Sparks was not at the jail when the attack

5  on Plaintiff occurred.   In addition, there are no facts showing that Defendant Sparks knew of the

6  attack and failed to act to prevent it or promulgated or "implemented a policy so deficient that the

7  policy itself is a repudiation of constitutional rights and was the moving force behind the

8  constitutional violation.  Thus, summary judgment in favor of Defendant Sparks is appropriate.

9  **E.  County of Kern**

10      Defendant County of Kern contends that summary judgment is appropriate as to it

11 because the undisputed facts do not show that a constitutional violation occurred and do not

12 show a custom or policy by the County of Kern.  Local governments can be "persons" subject to

13 liability under 42 U.S.C. § 1983.  Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978).

14 However, a local government unit may not be held responsible for the acts of its employees under

15 a respondent superior theory of liability.  Monell, 436 U.S. at 691; Fuller v. City of Oakland, 47

16 F.3d 1522, 1534 (9th Cir. 1995).  Rather, to state a claim for municipal liability, a plaintiff must

17 allege that he suffered a constitutional deprivation that was the product of a policy or custom of

18 the local government unit.  See City of Canton, Ohio, v. Harris, 489 U.S. 378, 385 (1989).   A

19 Section 1983 plaintiff may establish local government liability based on official policy or custom

20 only by (1) showing that a city or county employee committed the alleged constitutional violation

21 under a formal governmental policy or longstanding practice or custom that is the customary

22 operating procedure of the local government entity; (2) establishing that the individual who

23 committed the constitutional tort was an official with final policy-making authority and that the

24 challenged action itself was an act of official governmental policy which was the result of a

25 deliberate choice made among various alternatives; or (3) proving that an official with final

26 policy-making authority either delegated policy-making authority to a subordinate or ratified a

28           15

1   subordinate's unconstitutional decision or action and the basis for it.  Monnell, 436 U.S. at 691;

2   Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

3          A city or county cannot be liable for damages based on the actions of one of its

4   employees unless the employee inflicted constitutional harm. City of Los Angeles v. Heller, 475

5   U.S. 796, 799 (1986); Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994); Forrester v. City of San

6   Diego, 25 F.3d 804, 808 (9th Cir. 1994). This does not mean that the liability of municipalities or

7   counties turns on the liability of individual employees; rather, "it is contingent on a violation of

8   constitutional rights." Scott, 39 F.3d at 916.   Where the conduct of individual employees is

9   found reasonable and proper, the municipality or county cannot generally be held liable because

10  no constitutional violation occurred. See Scott, 39 F.3d at 916; Forrester, 25 F.3d at 808.   For the

11  reasons discussed above, the court finds that the undisputed facts presented to the court show that

12  Defendant Sparks, Defendant Perkins, and Defendant Reynolds did not violate Plaintiff's

13  constitutional rights.   As such, Defendant County of Kern is entitled to summary judgment.

14         In addition, Plaintiff has failed to show that Defendant County of Kern had any custom or

15  policy in place that was the moving force behind the alleged constitutional violations.   Plaintiff

16  has not alleged, let alone provided evidence, that Defendant County of Kern had a policy of

17  placing inmates in situations where they were likely to be attacked or doing nothing when

18  inmates were attacked.   Thus, based on the undisputed facts, Defendant County of Kern is

19  entitled to summary judgment.

20  **F.  Conspiracy Pursuant to Section 1985(c)**

21         The second cause of action alleges a conspiracy to violate Plaintiff's constitutional rights

22  pursuant to 42 U.S.C. § 1983(c).   Defendants contend that they are entitled to summary

23  judgment on Plaintiff's Section 1985(c) claim.   Defendants argue there is no evidence that

24  Defendants' conspired to deprive Plaintiff of his civil rights because of his race.

25         To state a cause of action under section 1985(3), a plaintiff must allege: (1) a conspiracy,

26  (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one

27

28                                            16

of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage, or deprivation of any right or privilege of a citizen of the United States.  United Brotherhood of Carpenters and Joiners of America v. Scott, 463 U.S. 825, 828-29 (1983); Giffin v. Breckenridge, 403 U.S. 88, 102-03 (1971); Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).   To meet the second of the four elements, a plaintiff must identify a legally protected right and demonstrate that the deprivation of the right was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  Bray v. Alexandria Women's Health Clinic, 113 S.Ct. 753, 758 (1993); Griffith, 403 U.S. at 102; Sever, 978 F.2d at 1536.  The Ninth Circuit's rule is that Section 1985(3) only extends to plaintiffs that can show they are members of a class that the government has determined requires and warrants "special federal assistance in protecting their civil rights."  Voight v. Savall, 70 F.3d 1552, 1564 (9th Cir. 1995);  Maynard v. City of San Jose, 37 F.3d 1396, 1403 (9th Cir.1994); Sever, 978 F.2d at 1536-37.  Specifically, plaintiffs bringing a cause of action under section 1985(3) must show that they are in a class that the courts have designated as a suspect or quasi-suspect class "requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection."   Sever, 978 F.2d at 1536.

Defendants contend that there is no evidence that their actions were motivated by racial animosity.   In his opposition, Plaintiff has not addressed Defendants' arguments concerning his Section 1985(c) cause of action.    Neither the complaint nor any evidence that has been provided to the court allege or show that Defendants' actions in this case were caused by Plaintiff's race. Plaintiff has simply not shown that the alleged conspiracy was motivated by a racial or class-based discriminatory animus.   Section 1985(3) is not intended to create a general federal tort cause of action for conspiracy; it requires a racial or other class based discriminatory motive. Sever, 978 F.2d at 1537; Gerritsen v. de la Madrid Hurtado, 819 F.2d 1511, 1518-19 (9th Cir. 1987).  The undisputed facts do not show Defendants' actions were motivated by Plaintiff's membership in a suspect, quasi-suspect, or other protected class.  Thus, Defendants are entitled

17

1  to summary judgment on Plaintiff's second cause of action brought pursuant to 42 U.S.C. §

2  1985(c).

3  **G.  Fourteenth Amendment and Due Process**

4        The third cause of action alleges a violation of Plaintiff's Fourteenth Amendment rights.

5  The fourth cause of action alleges a violation of "Due Process."   Neither Plaintiff's complaint

6  nor the opposition provide insight into the basis of Plaintiff's Fourteenth Amendment and Due

7  Process Clause claim.

8        Preliminarily, the court notes that Plaintiff's references to the Fourteenth Amendment and

9  due process may be a result of Plaintiff's status as a pretrial detainee.   As discussed above, the

10 Due Process Clause of the Fourteenth Amendment protects pretrial detainees from conditions of

11 confinement that amount to punishment.  Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979).

12 However, the court still applies the deliberate indifference standard of the Eighth Amendment to

13 claims concerning an alleged failure to protect a pretrial detainee.  See, e.g., Carnell, 74 F.3d at

14 979; Redman, 942 F.2d at 1442.   If Plaintiff's references to the Fourteenth Amendment and to

15 the Due Process Clause are merely attempts by a pretrial detainee to raise a failure to protect

16 claim, Plaintiff's claim has been addressed above.   However, because it is unclear what

17 Plaintiff's references to the Fourteenth Amendment and the Due Process Clause mean, in the

18 interest of caution, the court will also address a procedural and substantive due process claim.

19       The Due Process clause confers both procedural and substantive rights.  United States v.

20 Salerno, 481 U.S. 739, 746 (1987).   Procedural due process requires "an opportunity for some

21 kind of hearing prior to the deprivation of a significant property interest."  Memphis Light, Gas

22 & Water Div. v. Craft, 436 U.S. 1, 19 (1978).   Before a property interest can be taken, the

23 owner of the interest is entitled to notice and a hearing "at a meaningful time and in a meaningful

24 manner."  Armstrong v. Manzo, 380 U.S. 545, 552 (1965).   In this case, there are no allegations

25 that Defendants took any significant property interest from Plaintiff without a hearing.  In fact, no

26 allegations in the complaint or opposition imply this action concerns Defendants' failure to give

27

28                                          18

1    Plaintiff a hearing.  Thus, the court finds no procedural due process claim is before the court.

2            The substantive component of the Due Process Clause bars "certain government actions

3    regardless of the fairness of the procedures used to implement them."   County of Sacramento v.

4    Lewis, 523 U.S. 833, 840 (1998) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)).

5    "'The touchstone of due process is protection of the individual against arbitrary action of

6    government.'" Lewis, 523 U.S. at 845 (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)).

7    Substantive due process is violated by actions only that can "properly be characterized as

8    arbitrary, or conscience shocking, in a constitutional sense." Lewis, 523 U.S. at 847  "[T]he

9    Constitution does not guarantee due care on the part of state officials; liability for negligently

10   inflicted harm is categorically beneath the threshold of constitutional due process." Id. at 849.

11           In Graham v. Connor, the United States Supreme Court found that substantive due

12   process cannot supply the basis for a civil rights claim if the challenged governmental conduct is

13   prohibited by another, more specific, constitutional right. Graham, 490 U.S. 386, 394-95 (1989);

14   Buckles v. King County, 191 F.3d 1127, 1137 (9th Cir. 1999); Macri v. King County, 126 F.3d

15   1125, 1128 (9th Cir.1997).   In this action, Plaintiff alleges that Defendants failed to protect him

16   from an attack by other inmates and failed to stop the attack once the attack began.   The Eighth

17   Amendment "provides [the] explicit textual source of constitutional protection . . . ."   Patel v.

18   Penman, 103 F.3d 868, 874 (9th Cir. 1996).   Thus, Defendants are entitled to summary judgment

19   on Plaintiff's Fourteenth Amendment and Due Process Clause causes of action.

20                                               **ORDER**

21           Accordingly, for the reasons stated in the above memorandum opinion, the court

22   ORDERS that:

23   1.    Defendants' motion for summary judgment is GRANTED; and

24   2.     The Clerk of the Court is DIRECTED to enter judgment for Defendants.

25   IT IS SO ORDERED.

26   **Dated:    July 26, 2005    **              _____/s/ Anthony W. Ishii_____
     9h0d30                                       UNITED STATES DISTRICT JUDGE
27

28                                                 19